GLICKSTEIN, Judge,
concurring specialty-
I write for two reasons. The first is to advise the bench and bar that this is an appeal from a sentence which departs from the guidelines. We have affirmed because we agree with the trial court’s conclusion that departure is warranted by appellant’s crime spell; namely, four burglaries within less than two weeks.
*893 The second reason is to inform (a) the trial court here of my disagreement with its deprecation of sentencing guidelines and (b) the bench and bar of my personal belief that sentencing guidelines are indispensable to prevent ad hoc sentencing. Without them, how can there be “justice for all”? With ad hoc sentencing, how can there be “justice at all?” In my view, the guidelines represent positive leadership on the part of the State of Florida in the most important area of an individual judge’s concern — the loss of another individual’s freedom.
There is no question that the existence of sentencing guidelines has become the subject of present debate upon members of the judiciary and of the legislature respectively. The initial phase of that debate has now reached the Supreme Court of Florida, which now is considering the petition of the Sentencing Guidelines Commission and the responses thereto. In Re: Rules of Criminal Procedure, Case No. 69,411. This writer has, together with former Chief Justice Alan Carl Sundberg and present Public Defender J. Marion Moorman, filed with that court a response, which reads, in part:
A recent editorial in the Miami Herald noted than when 50 federal judges were given a file on an extortion case and asked to recommend a sentence, the result ranged from 3 years in prison to 20 years plus a $65,000 fine.
Another example is found in a draft paper of a research study on disparity in sentencing in the Superior Courts of Maine, presented at the 1986 annual meeting of the Academy of Criminal Justice Sciences in Orlando during March of 1986. The data analyzed consisted of sentences imposed by the 14 Superior Court judges on eight identical criminal cases that had been disposed of previously in Maine’s courts. Superior Court judges were chosen as they are the most experienced members of Maine’s judiciary in criminal sentencing and are responsible for imposing sentences on felony convictions. The eight cases involved convictions for crimes against persons and were paired into four offense categories, which consisted of manslaughter, vehicular manslaughter, robbery, and assault. Presentence reports provided the judges were the actual reports used at trial. None of the cases involved sentences recommended by prosecutors.
The participants were operating in the same statutory environment, were experienced in criminal sentencing, and were imposing sentences on the same factual set of circumstances. Ideally, substantially the same or at least similar sentences should have resulted. Instead, wide variations occurred. Had each of the eight defendants been sentenced by the judge imposing the most severe sanction in each case, a total of 972 months, or 81 years, of incarceration would have been imposed for these eight cases. Had the most lenient judge in each case actually imposed the sentence, a total of 111 months, or 9 years, would have been imposed. This represented a difference of 72 years, or 861 months.
Noting that this analysis did not in itself prove disparity, the researchers next compared the range of variation in sentences by comparing individual sentences with the mean sentence length for each offense sentenced in the experiment. They concluded that of 103 sentences, 50 exceeded the range the researchers established as an indication of reliability in sentencing for variation for a particular offense. Moreover, the sentences for all but one of the eight offenses showed that over 30% of the judges exceeded the established range. In 50% of the total cases, over 50% of the judges exceeded the established ranges
As Judge Frankel has stated:
The evidence is conclusive that judges of widely varying attitudes on sentencing, administering statutes that confer huge measures of discretion, mete out widely divergent sentences where the divergencies are explainable only by the variations among the judges, not by material differences in the defendants or their crimes. Even in our age *894 of science and skepticism, the conclusion would seem to be among those still acceptable as self-evident. What would require proof of a weighty kind, and something astonishing in the way of theoretical explanation, would be the suggestion that assorted judges, subject to little more than their unfettered wills, could be expected to impose consistent sentences.13
13 Frankel, M. 1972 Criminal Sentences, Law Without Order, at 21, New York, NY: Hill and Wang.
(Some footnotes omitted.)